UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOHN RANDALL RHEA, Father and ) <br> Next of kin of GLENN RANDALL RHEA, ) <br> Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> V. ) <br> ) <br> BROWN MANUFACTURING CORP., ) <br> ) <br> Defendant. ) | No. 3:08-CV-35 <br> (PHILLIPS/GUYTON) |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Orders [Doc. 30, 48] of the Honorable Thomas W. Phillips, United States District Judge, for disposition of the Plaintiff's Motion to Exclude Opinion Testimony [Doc. 29] and Defendant's Motions To Exclude Opinion Testimony [Docs. 31, 35, and 39]. On May 21, 2010, the parties came before the Court for a hearing on the listed motions. After the hearing, the Court took the matter under advisement, and the motions are now ripe for adjudication.

Plaintiff John Rhea, father and next kin of Glenn Randall Rhea, decedent, ("Plaintiff") moves the Court to exclude the testimony of Defendant Brown Manufacturing Corporation's ("Defendant") expert, Fred Lurwig. In turn, Defendant moves the Court to exclude the testimony of Plaintiff's experts, Tyler Kress, Robert Parrish, and Robert Jay Block. The Court will address each expert in turn.

## I. Background

This product liability lawsuit arises from an alleged defect, or defects, in the design of a "bush hog" type heavy-duty mowing machine called a model 2615C Brown Tree Cutter ("The Cutter"), manufactured by the Defendant. Using large rotary blades, The Cutter is capable of cutting trees up to six inches in diameter. The Cutter is designed to be pulled by a tractor, with the power for the blades coming from the tractor's engine by way of a power take off ("PTO"). On March 29, 2007, the deceased son of the Plaintiff was using The Cutter to clear land. The deceased was working alone, and there are no witnesses to exactly what happened. The parties, however, agree that somehow one leg of the deceased came in contact with the turning blades of The Cutter, resulting in amputation below the knee. The deceased died as a result of this injury. The parties also agree that the PTO was disengaged prior to this injury to the decedent.

Plaintiff alleges that Defendant was negligent in the manufacture and design of The Cutter and, more specifically, the lack of a guard (exposed blade) and lack of a brake on the blades, to prevent turning after the PTO is disengaged, resulted in an unreasonably defective and dangerous product. [Doc. 63]. The Defendant says that The Cutter's design met all applicable industry standards and that it is not unreasonably dangerous.

## II. Applicable Law: Admissibility of Expert Testimony

The parties each challenge the admissibility of the opposing party's expert testimony under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys

broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153. The party proffering the expert testimony bears the burden of showing its admissibility under Rule 702 by a preponderance of the evidence. Daubert, 509 U.S. at 592 n. 10. With this framework in mind, the Court will now address the instant motions.

In addition to this well-established authority, the parties also rely on the decision of the United States Court of Appeals for the Sixth Circuit in Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426 (6th Cir. 2007). In Johnson, the Appeals Court affirmed the trial court's exclusion of the Plaintiff's expert witness in a product liability case, finding that the purported expert's alternative design theory was untested, and that the expert lacked significant technical expertise in the industry, so as to overcome the lack of testing. Id. at 431-433.

**III.    Plaintiff's Motion To Exclude Fred Lurwig ("Lurwig") [Doc. 29]**

Plaintiff generally asserts that the Defendant's expert, Lurwig, has no objective support for his personal opinions that The Cutter is not defective or unreasonably dangerous when used properly. The Defendant argues that Lurwig was employed by Bush Hog Division Allied Products for seventeen years as a design engineer and that he is an expert in the manufacturing standards and practices applicable to the rotary mower / cutter industry.

The Court notes that one of the key issues in this case is whether a certain standard, SAE J-232, applies to the product in question. Both sides agree that this issue will be a fact question for the jury. Lurwig argues that the standard does not apply. Lurwig bases this opinion on his training, work experience, and professional background, along with his actual operation of the machine in

4

question. The Court finds that Lurwig has the expertise to present that opinion to the jury, along with the other opinions of his report. [Doc. 53-1].

**IV.     Defendant's Motion To Exclude Tyler Kress ("Kress") [Doc. 31].**

Defendant argues that Kress is an "academic" who has no "real world experience" with machines like the product in question. Kress opines that the design of The Cutter does not comply with SAE J-232 (a foot probe test). Defendant says that Kress's opinion is not admissible, because Kress is not "familiar" with SAE J-232 or with tree cutters generally. The Plaintiff counters that Kress has education and experience in the design fields of biomedical engineering and human factors engineering, the field in which he received his doctoral degree. Plaintiff argues that Kress has sufficient expertise in trauma and injury prevention, particularly to the lower limbs, to provide the basis for his opinion testimony in this case. The Court agrees and finds that the testimony of Kress shall be admitted.

**V.     Defendant's Motion To Exclude Robert Parrish ("Parrish") [Doc. 35]**

Plaintiff's expert Parrish seeks to opine that an alternative design for The Cutter could include a braking system for the blades. This brake supposedly would stop the rotation of the blades in less than 20 seconds. Twenty seconds, according to Plaintiff, is the least amount of time it could have taken the defendant, after disengaging the PTO, to go from the seat of the tractor to the blades. The Plaintiff says that as manufactured, the blades continue to rotate 4 - 4 ½ minutes after the PTO is disengaged. Plaintiff asserts that Parrish's brake was fabricated and installed on The Cutter, and that it stopped the blades in less than 20 seconds.

Defendant says that its motion relative to Parrish is a "partial" motion, seeking only to exclude Parrish's proposed alternative brake design. Defendant argues that Parrish's only tests of his design are controlled environment tests of limited duration, and not tests while cutting trees, over an extended period of time. Thus, Defendant argues, possible failure mechanisms are not exposed. In addition, Defendant criticizes the lack of specifications for the Parrish design and asserts that no one uses such a design in the tree cutter industry.

The Court finds that the Defendant's objections to Parrish's alternative design opinion are not sufficient to ban the admission of that opinion at trial. As the Daubert court noted "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The Court finds this statement of law to be applicable to Parrish.

Parrish also proposes a "cover plate" design to prevent someone from putting a leg into the blades from the top of The Cutter. Parrish opines that a rigid deck or folding deck would have provided guarding. [Doc. 36-1]. The parties, however, are now in agreement that the injury occurred when the decedent's leg apparently slid under the rear area and made contact with the still rotating blades. Therefore, this part of Parrish's opinion shall be excluded, along with any opinion regarding the height of the push bar.

## VI.    Defendant's Motion To Exclude Robert Jay Block ("Block") [Doc. 39]

Plaintiff's expert Block opines that the design of The Cutter should include protective covers over the openings that allow access to the rotary blades from above. This opinion shall be excluded,

as irrelevant, based on the stipulation of the parties that said openings played no part in the decedent's injury.

Block's other opinion is that the closed portion of the deck and pressure bars should be extended rearward. [Doc. 49-K].

Defendant argues that Block's alternative design has not, in fact, been designed, and certainly not tested in any way. Defendant argues that Block's engineering experience is in metallurgy, with no experience in the area of tree cutters or rotary cutter designs. Finally, Defendant asserts that Block's design concept was prepared solely for this litigation and reflects no actual training, experience, or expertise in the relevant area.

The Court agrees with the Defendant that Block lacks the relevant expertise necessary for him to opine as to the alternative design for The Cutter, given that he has produced no such design, much less tested one. Block's Curriculum Vitae shows that he is a distinguished metallurgist. For example, he holds a patent for a "Method for Producing Iron and Steel From Iron Ore." He has a Ph.D. in metallurgical engineering. His publications, research, and presentations demonstrate a career of work directed toward extracting, purifying, protecting, and alloying metals. If the issue in this case involved the physical or chemical properties of metallic elements, Block would be well suited to offer expert testimony. The Court, however, can discern nothing in Block's otherwise accomplished career which would "show that the expert has significant technical expertise in the specific area in which he is suggesting an alternative design." Johnson, 484 F.3d at 431.

The Court finds that the Defendant's objections to the proposed opinion testimony of Block are well-taken, and Block's opinions [Doc. 28-A] shall not be admitted at trial.

## VII. Conclusion

For all of the reasons stated above, the Court will **DENY** the Plaintiff's Motion to Exclude Fred Lurwig **[Doc. 29]** and **DENY** the Defendant's Motion to Exclude Tyler Kress **[Doc. 31]**. The Court will **GRANT IN PART** and **DENY IN PART** the Defendant's Motion to Exclude Robert Parrish **[Doc. 35]**, as more fully explained above, and finally, the Court will **GRANT** the Defendant's Motion to Exclude Robert Jay Block **[Doc. 39]**.

**IT IS SO ORDERED.**

ENTER:

　　　　s/ H. Bruce Guyton　　　
United States Magistrate Judge